## W. D. HOOVER V. STATE

No. 27,612.   June 8, 1955

*Otto W. Whittington,* Bartlett, and *W. K. McClain,* Georgetown, for appellant.

*Tom Blackwell,* County Attorney, *Doren R. Eskew,* City Attorney, Austin, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

For the violation of an ordinance of the city of Austin which makes it an offense to solicit funds for charitable or welfare purposes (1) as a principal, unless such person shall have first obtained a permit as therein provided; (2) as an agent, unless his principal shall have first obtained such a permit; or (3) as an agent, unless such person shall have first obtained a permit, appellant was convicted in the corporation court and on appeal in the county court. He appeals from the later conviction where, in a trial before the court, he was assessed a fine of $125.00.

The complaint charged that appellant "in the City of Austin, in Travis County, Texas, did then and there unlawfully solicit funds for charitable or welfare purposes * * * when he * * * had not first obtained a permit from the City Manager of the City of Austin, Texas, to solicit funds for charitable or welfare purposes in the City of Austin."

It is contended by the prosecution that appellant "was solicit-

ing funds for his own personal purposes from the general public upon the public streets by the use of a tambourine," in violation of the city ordinance, the sole object of which is the regulation (not prohibition) of appeals to the public for funds on the plea or representation that such funds are to go to charity.

The prosecution points out that, as recited in the ordinance, it is intended to curtail the activities of unscrupulous individuals who publicly solicit funds upon the representation that such funds are to be used for charitable or welfare purposes, when such funds are in fact used wholly or in large part for private profit, with the results that honest charities suffer from such pernicious activities.

It is further contended by the prosecution that appellant was not engaged in distributing religious tracts, and was not engaged in any preaching activity.

The appellant, on the other hand, contends that as applied to him, the ordinance is invalid as in violation of the Constitution of the United States, First and Fourteenth Amendments, and the Constitution of The State of Texas, Art. I, Secs. 6 and 8.

The state's evidence was to the effect that appellant was wearing a cap similar to that worn by Salvation Army people, except that on its band appeared the words "Christian Army Missions." He carried in his hand a tambourine, and in his pockets had a number of religious pamphlets or tracts.

As a Mexican boy came across the street, appellant, shaking the tambourine, said "Do you want to help?" Whereupon the Mexican boy took a coin from his pocket and placed it in the tambourine.

Appellant, testifying in his own behalf, admitted the solicitation as described by the arresting officer, but testified that he offered the boy a tract or pamphlet at the time, which he declined. The arresting officer denied this and testified that appellant had nothing in his hand except the tambourine.

Without regard to this conflict in the evidence, it is apparent that if the state's evidence showed any purpose, actual or represented, for which the solicitation was made by appellant, it was that implied from the cap and tambourine and the pamphlets and tracts which appellant had on his person.

Added to this, the undisputed evidence is that appellant was an ordained minister and an agent of the sect, order or organization known as "Christian Army Missions" and that such group maintained in Austin a mission where religious services were held weekly, and lodging was provided for occasional visitors who requested same.

It is also shown, without contradiction, that appellant had lived in Austin for a number of years, during which time he and his wife were identified with the Christian Army Missions organization, lived at the mission and conducted such activities as church services, the exhibition of motion pictures of a religious nature and "carrying out the doctrinal statement" of the organization; the distribution of religious pamphlets and tracts; the collection and distribution of food and clothing, all of which activity of the "Christian Army Missions" was supported by "tambourine offering among the public" conducted by appellant, his wife and others.

On the other hand there are facts and circumstances shown in the record which would support a finding that appellant had been accused but not convicted of criminal offenses which, if admissible as evidence, might bear upon his reputation for honesty and integrity, and that the funds received by The Christian Army Missions were used in large part for the support of appellant and his wife and for such purposes as the purchase of a $2,500 automobile for their use.

There is no evidence, however, to dispute the testimony that the funds collected by appellant's solicitation were delivered to and disbursed by appellant's wife as the head officer of the Christian Army Missions in Texas.

The ordinance in question defines "charitable or welfare purposes" to include "the use, actual or represented, of money or property for the benefit of any church, congregation, religious society or any other religious sect, group or order."

From the foregoing, it is clear that if appellant violated the ordinance he did so by soliciting funds for the use, actual or represented, of The Christian Army Missions, when neither had first obtained a permit, as required by the ordinance.

It is shown that appellant had not applied for a permit, insisting that he needed none, and that the application of The Christian Army Missions for a permit had not been granted.

Under the ordinance, as applied to appellant, solicitation is allowed without restraint if a permit is first secured. But without a permit the solicitation is made a penal offense.

The solicitation board set up by the ordinance, and to whom the application is referred before the city manager may issue a permit, is required to make certain findings of fact, among which are that the applicant has a good character and reputation for honesty and integrity; or, if not an individual, that every officer has such a good character or reputation; that the charitable or welfare purpose will receive a reasonable portion of the solicited funds (25% or more).

The solicitation board must further find and certify to the city manager, before the permit issues, that "the exact purpose for which the solicitation is to be made is in fact a charitable or welfare purpose; that the solicitation is primarily intended to finance the exact purpose described in the application, and will not be conducted for private profit."

The application for permit must be accompanied by "a statement of three reputable citizens of the City of Austin, certifying that they are acquainted with the person making the application and to the best of their knowledge and belief, the application is made in good faith for the primary purpose of soliciting funds for charitable and welfare purposes, and not for private profit."

The ordinance thus clearly provides for the exercise of a discretion in the granting or refusal of the application for permit. The provision for appeal to the city council when a permit is not issued is that, after a hearing, the council shall either grant or deny such permit.

The issue is therefore clearly before us as to whether the ordinance as applied to a minister or agent of a church or other religious group soliciting funds from the general public for the support of such religious group imposes a previous restraint upon his exercise of religious freedom.

Under the decision of the Supreme Court of the United States in Cantwell et al. v. Connecticut, 60 Sup. Ct. 900, 310 U.S. 296, 84 L. Ed. 1213, we must hold that the ordinance as so applied does so, and appellant's conviction cannot stand. We quote from that opinion:

"To condition the solicitation of aid for the perpetuation of religious views or systems upon a license, the grant of which rests in the exercise of a determination by state authority as to what is a religious cause, is to lay a forbidden burden upon the exercise of liberty protected by the Constitution."

As in the Cantwell case, the authority (in this case the solicitation board of the city) is empowered to determine whether the cause is a religious one (in this cause, whether the "The Christian Army Missions" is a religious society, sect, group or order) and to find that the applicant has a good character and reputation, and as to the religious group, that every officer has a good character or reputation for honesty and integrity. Affirmative findings upon these and other facts are essential to the issuance of the required permit, and involve an appraisal of facts, the exercise of judgment and the formation of opinion.

The required permit is not to be issued as a matter of course and the ordinance is more than a registration to establish the identity of the solicitor and his authority to act for the cause which he purports to represent.

If appellant solicited funds upon the false and fraudulent plea or representation that such funds were to go to The Christian Army Missions when in fact they were to be appropriated and used for his private profit, or solicited funds for a charitable or welfare cause other than a religious group, no question of religious freedom would arise. But the undisputed evidence in the record before us shows that the funds were solicited for the use of The Christian Army Missions, the disputed issues being as to the use to which the money was put by that religious group.

The judgment is reversed and the cause is remanded.